IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOY HARRIS | ) |
| As Next Friend to The Estate of ELISA AKERS, | ) ) ) |
| Plaintiff, | ) Civil Action No: ) |
| v. | ) Judge ) ) Magistrate Judge ) |
| METROPOLITAN GOVERNMENT OF NASHVILLE DAVIDSON COUNTY, TENNESSEE | ) ) ) ) |
| And, | ) JURY DEMAND ) |
| JASON JOSEPH, | ) ) |
| Defendants. | ) |

## COMPLAINT

1. Plaintiff brings this 42 U.S.C. § 1983 action on behalf of the Estate of Ms. Elisa Akers alleging that Defendants violated Ms. Akers's constitutional and Tennessee law rights by subjecting her to sexual abuse in August 2021 while she was an inmate at the Davidson County Sheriff's Office. Plaintiff seeks financial damages on behalf of the estate.

### PARTIES

2. Plaintiff Joy Harris is the adult sister of the deceased Ms. Elisa Akers, and the court-appointed Administrator ad Litem for the Estate of Elisa Akers for purposes of pursuing this legal action.

3. Defendant Metropolitan Government of Nashville Davidson County, Tennessee ("Metro") is a municipal entity organized under the laws of Tennessee.

1

4. Defendant Jason Joseph was at all times pertinent to this lawsuit a deputy of the Davidson County Sheriff's Office ("DCSO") with the rank of corporal.

5. Defendant Joseph was acting in his capacity as a corrections officer at all times pertinent to this lawsuit.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Tennessee law claims in this matter pursuant to 28 U.S.C. § 1367. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this district.

## FACTUAL BACKGROUND

7. From 2014 until November 15, 2021, Defendant Jason Joseph was a deputy of DCSO whose job was to work as a correctional officer in the women's jail.

8. Prior to August 2021, Defendant Joseph had a pattern of entering female inmate's cells against policy.

9. DCSO video surveillance observed and recorded all such occasions in which Joseph entered female inmates' jail cells.

10. DCSO policy strictly forbade corrections officers from going into inmates' cells except for purposes of an official inspection/search.

11. DCSO policy also strictly forbade corrections officers from engaging in personal relationships with inmates, or from bringing anything into their cells.

12. During a number of Joseph's improper visits to female inmates' cells, he made sexual comments to the inmates, had them disrobe either partially or fully and, on some occasions, touched the inmates' intimate body parts.

13. Defendant Joseph also had a pattern of watching female inmates shower.

14. Notwithstanding the aforementioned DCSO policies, DCSO did nothing to investigate Defendant Joseph's pattern of improper conduct toward female inmates, or to discipline or counsel Defendant Joseph him for it, until after the events at issue in this lawsuit.

15. In August 2021, the deceased Elisa Akers was serving a sentence as an inmate in the custody of DCSO.

16. On or about August 5, 2021, Ms. Akers was moved into a segregation cell and isolated.

17. Also on or about August 5, 2021, Defendant Joseph went into Ms. Akers's cell, ordered her to "open her legs," and fondled her between her legs.

18. Joseph's invasion of Ms. Akers's cell was observed on DCSO video surveillance and recorded, but DCSO did nothing to stop him.

19. Joseph then ordered Akers to keep silent about his having violated her, and threatened that she would be criminally charged if she told anyone.

20. On or about August 6, 2021, Defendant Joseph again went into Ms. Akers's cell, forced her to strip down to her panties, and then put one of his fingers inside her vagina. Joseph then fondled Ms. Akers's vagina against her will.

21. Joseph then told Ms. Akers that she was going to give him "head" the next time he was in the pod, and left her cell.

22. Joseph's invasion of Ms. Akers's cell was observed on DCSO video surveillance and recorded, but DCSO did nothing to stop him.

23. In September 2021, DCSO finally opened an investigation into Defendant Joseph's inappropriate behavior.

24. DCSO's investigation of Joseph resulted in interviews of multiple female inmates, at least eight of whom made allegations against Joseph of sexually inappropriate behavior which had mostly taken place prior to August 2021.

25. The investigation also resulted in the interview of at least one fellow correctional officer who made allegations against Joseph of sexually inappropriate behavior.

26. The investigation also reviewed DCSO surveillance footage proving that Joseph had entered Akers's cell in violation of policy.

27. Many of the inmate interviewees, including Ms. Akers, expressed fear that by giving statements against Joseph they would be labeled a "snitch" and retaliated against.

28. On October 22, 2021, DCSO issued a formal letter finding that Joseph had engaged in various forms of misconduct, including sexually abusing Ms. Akers.

29. DCSO then conducted administrative disciplinary proceedings, which resulted in Joseph's termination on November 15, 2021.

30. On January 26, 2022, while taking a shower in DCSO custody, Ms. Akers experienced a sudden medical emergency, was taken to the hospital, and died later that night.

31. Ms. Akers is survived by three minor children and a husband.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### (42 U.S.C § 1983)

**(ALL DEFENDANTS)**

32. Plaintiff hereby reincorporates paragraphs 1 – 31 by reference.

33. Defendant Joseph used his authority as a corrections officer to commit acts of sexual misconduct against Ms. Akers.

34. Defendant Joseph acted under color of state law in perpetrating his acts of abuse.

35. Defendant Joseph's abuse of Ms. Akers shocks the conscience in the gravity of Joseph's misconduct.

36. DCSO had ample opportunities prior to Ms. Akers's victimization to catch Joseph committing inappropriate acts against female inmates and stop him. DCSO failed to do so in reckless disregard of its obligations to protect inmates from sexual abuse.

37. Ms. Akers suffered physical discomfort, humiliation, the invasion of her rights and bodily integrity, and extreme emotional distress from Joseph's sexual abuse.

### COUNT II: VIOLATION OF EIGHT AMENDMENT PROHIBITION ON CRUEL AND UNUSUAL PUNISHMENT
### (42 U.S.C § 1983)

**(ALL DEFENDANTS)**

38. Plaintiff hereby reincorporates paragraphs 1 – 31 by reference.

39. Defendant Joseph used his authority as a corrections officer to commit acts of sexual misconduct against Ms. Akers.

40. Defendant Joseph acted under color of state law in perpetrating his acts of abuse.

41. Defendant Joseph's misconduct against Ms. Akers constituted cruel and unusual punishment.

42. DCSO had ample opportunities prior to Ms. Akers's victimization to catch Joseph committing inappropriate acts against female inmates and stop him. DCSO failed to do so in reckless disregard of its obligations to protect inmates from sexual abuse.

43. Ms. Akers suffered physical discomfort, humiliation, the invasion of her rights and bodily integrity, and extreme emotional distress from Joseph's sexual abuse.

### COUNT III: TENNESSEE COMMON LAW BATTERY
### (DEFENDANT JOSEPH)

44. Plaintiff hereby reincorporates paragraphs 1 – 31 by reference.

45. Defendant Joseph used his authority as a corrections officer to commit acts of sexual misconduct against Ms. Akers.

46. Defendant Joseph acted under color of state law in perpetrating his acts of abuse.

47. Defendant Joseph physically and sexually violated Ms. Akers against her will.

48. Ms. Akers suffered physical discomfort, humiliation, the invasion of her rights and bodily integrity, and extreme emotional distress from Joseph's sexual abuse.

### COUNT IV: TENNESSEE COMMON INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (DEFENDANT JOSEPH)

49. Plaintiff hereby reincorporates paragraphs 1 – 31 by reference.

50. Defendant Joseph used his authority as a corrections officer to commit acts of sexual misconduct against Ms. Akers.

51. Defendant Joseph acted under color of state law in perpetrating his acts of abuse.

52. Defendant Joseph intentionally violated Ms. Akers against her will both physically and sexually.

53. Defendant Joseph's conduct was so outrageous that it is not tolerated in a civilized society.

54. Defendant Joseph's conduct inflicted serious mental injury on Ms. Akers.

55. Ms. Akers suffered physical discomfort, humiliation, the invasion of her rights and bodily integrity, and extreme emotional distress from Joseph's sexual abuse.

**COUNT V: T.C.A. § 8-8-302 MUNICIPAL LIABILITY FOR SHERIFF'S DEPUTY MISCONDUCT (DEFENDANT METRO)**

56. Plaintiff hereby reincorporates paragraphs 1 – 31 by reference.

57. Defendant Joseph used his authority as a corrections officer to commit acts of sexual misconduct against Ms. Akers.

58. Defendant Joseph acted under color of state law in perpetrating his acts of abuse.

59. Defendant Joseph was a DCSO sheriff's deputy when he committed his acts of abuse against Ms. Akers.

60. Defendant Joseph physically and sexually violated Ms. Akers against her will.

61. Ms. Akers suffered physical discomfort, humiliation, the invasion of her rights and bodily integrity, and extreme emotional distress from Joseph's sexual abuse.

62. Metro is liable for Joseph's misconduct taken under color of office against Ms. Akers.

## REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.
2. That this cause be tried by a jury.
3. That judgment for Plaintiff enter against the Defendants on each count.
4. That Plaintiff be awarded compensatory, nominal, and punitive damages against Defendant Joseph in the amount determined by a jury.
5. That Plaintiff be awarded compensatory and nominal damages against Defendant Metro in the amount determined by a jury.
6. That Plaintiff be awarded attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).
7. That the court costs in this matter be taxed to Defendants.
8. That Plaintiff be awarded all other relief to which it may appear she is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
2901 Dobbs Ave
Nashville, TN 37211
T: (615) 429-4717 / F: (615) 229-6387
E: Kyle@relentlesslaw.com