| | | |
|---|---|---|
| JOY HARRIS as next friend to the Estate of ELISA AKERS, | ) ) ) | Case No. 3:22-cv-00581 |
| Plaintiff, | ) ) | |
| v. | ) ) | Chief Judge Crenshaw Magistrate Judge Holmes |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, and JASON JOSEPH, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT THE METROPOLITAN GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

No individual should be subject to harassment or sexual assault. The Davidson County Sheriff's Office ("DCSO") maintains strict policies and procedures to protect the inmates in their custody from sexual harassment or sexual assault. Regrettably, despite those policies, DCSO inmate Elisa Akers was victimized by then-Corporal Jason Joseph ("Joseph").[1] Joseph sexually harassed Ms. Akers by asking her to perform lewd acts and sexually assaulted her by digital penetration.

Prior to this, Joseph served as a corrections officer at DCSO for seven years without any allegations of sexual harassment or sexual assault. DCSO received notice of Joseph's inappropriate sexual behavior after he interacted with Ms. Akers. Before that, DCSO had no reason to suspect that Joseph would engage in these behaviors.

---

[1] Joseph has denied these allegations. For purposes of summary judgement only, DCSO assumes that Joseph engaged in the behavior and that a constitutional violation occurred.

Ms. Akers's adult sister[2] asserts two claims under 42 U.S.C. § 1983 ("Section 1983") against both Joseph and DCSO, two state law intentional torts against Joseph, and a claim for municipal liability against DCSO under the Sheriff's Statute, Tenn. Code Ann. § 8-8-302.

The Complaint alleges that DCSO is responsible for Joseph's violations of Ms. Akers's Fourteenth and Eighth Amendment rights. (Compl. ¶¶ 32-43, Doc. No. 1.) The Complaint acknowledges the robust policies that DCSO maintained. (*Id.* ¶¶ 10, 11.) There are no facts in the Complaint establishing a prior pattern of similar constitutional violations committed by Joseph or any other corrections officer. Instead, it predicates the municipal liability claims on a failure to supervise Joseph. The Complaint theorizes that "DCSO had ample opportunities prior to Ms. Akers's victimization to catch Joseph committing inappropriate acts against female inmates and stop him. DCSO failed to do so in reckless disregard of its obligations to protect inmates from sexual abuse." (*Id.* ¶¶ 36, 42.) There are no facts in the Complaint to support this conclusion. Moreover, no facts could be developed that support this claim. The witnesses in the investigation into Joseph's conduct stated that they did not previously report his behavior. And his prior disciplinary history is completely devoid of allegations of sexual misconduct. Thus, the constitutional claims against DCSO fail because a failure to supervise cannot be established and DCSO is entitled to summary judgment under Fed. R. Civ. P. 56.

The state law claim against DCSO under the Sheriff's Statue does not fare any better. In contrast to the requirements of Section 1983, the Sheriff's Statute imposes vicarious liability on the County for "any wrong" committed by a Sheriff's deputy. Multiple courts of appeals, including the Sixth Circuit, have rejected a plaintiff's attempts to avoid the rigorous requirements of municipal liability by using a state law vicarious liability statute. A state

---

[2] Ms. Akers passed away on January 26, 2022, because of a sudden medical emergency. There are no claims asserted relating to her death. (Compl. ¶ 30.)

law vicarious liability claim cannot be maintained in the same action as a constitutional claim under Section 1983 when the underlying facts are the same. Accordingly, pursuant to Fed. R. Civ. P. 56, DCSO is also entitled to summary judgment on the Sheriff's Statute claim.

## FACTS

On September 1, 2021, DCSO Chief of Security Thomas Conrad reported allegations made by inmate Maria Sanchez that she heard Joseph command a female inmate to show him her breasts. (Declaration of Evin Baylis ¶ 3, filed contemporaneously; Cpl. Jason Joseph Investigation Memorandum ("Joseph Memo") at 1, attached as Exhibit 1 to Baylis Declaration.) Shortly after this conversation, case manager Christina Fonseca forwarded to Chief Conrad a complaint from Elisa Akers, a fellow inmate, that alleged Joseph asked her to "play with herself." (*Id.*)

After these allegations, Conrad began reviewing video to identify inmates to interview. (*Id.*) Conrad and Facility Administrator Joyner promptly began interviews that brought forth additional allegations of inappropriate sexual comments made by Joseph towards several inmates. (*Id.*)

On September 2, 2021, Case Manager Fonesca advised Facility Manager Joyner that Ms. Akers reported that Joseph touched her. (*Id.*) Because of the seriousness of the allegations, DCSO referred the investigation to their Investigations Division and immediately placed Joseph on administrative leave. (*Id.*) DCSO also contacted the Metropolitan Nashville Police Department to begin a parallel investigation.

In investigating the allegations, the investigator interviewed more than a dozen individuals, reviewed daily logs, any video, phone calls of inmates, and Joseph's statements. (*See* Joseph Memo.)

The investigation revealed the following:

1.  Joseph asked Ms. Akers to "play" with herself and to "shake [her] ass and show [her] titties." She did not report this because Joseph told her that she would get in trouble. (*Id.* at 2.)

2.  Ms. Sanchez reported that during the week of August 23, 2021, she heard a male officer tell a fellow inmate "I am not leaving until you show me your titties." Ms. Sanchez had not previously heard Joseph make inappropriate comments, and she reported the incident to Chief Conrad. (*Id.* at 3.)

3.  Also, during the week of August 23, 2021, Joseph requested to touch an inmate's butt. This same inmate, Lakeisha Congo, revealed during the investigation that Joseph frequently made inappropriate comments. Ms. Congo did not report Joseph's comments because she did not want to get in trouble, and she did not want Joseph to get angry with her. (*Id.* at 4.)

4.  Two inmates, Aaliyah Washington and Dameisha Clark, recounted an incident on August 18 or 19, 2021, when Joseph entered their cell and asked them to expose themselves. Ms. Washington complied. Neither Ms. Washington nor Ms. Clark reported the incident. (*Id.* at 4-5.)

5.  Ms. Clark also reported that in January 2021, Joseph requested that she expose herself when she was housed in the restricted housing unit. She stated that she did not report this incident because she did not think anything would happen. (*Id.* at 5.)

6.  Another inmate, Ajah Miles, reported that Joseph routinely made inappropriate comments, but that she did not report any of the incidents because she did not want to be labeled a snitch. Although other inmates alleged that Joseph digitally penetrated Ms. Miles, she and Joseph vehemently denied the allegations. (*Id.* at 5-6.)

Based on video evidence, the investigation did not sustain the allegation that Joseph watched inmates in the shower or that he sexually assaulted Ms. Miles. It did sustain that Joseph made inappropriate comments. And that Joseph entered the cell of Ms. Clark and Ms. Washington. (*Id.* at 9-11.)

Regarding Ms. Akers, the investigation determined that he inappropriately entered her cell. (*Id.* at 13.) And while Joseph denied ever physically touching an inmate, the investigation determined that his explanations were not credible. Accordingly, it concluded by a preponderance of the evidence that Joseph digitally penetrated Ms. Akers. (*Id.* at 13.)

DCSO terminated Joseph's employment on November 15, 2021 because of the above events. (Declaration of Evin Baylis ¶¶ 3, 4, Jason Joseph Personnel File ("JJ personnel file," attached as Exhibit 2 to Baylis Declaration.) Prior to his termination, DCSO disciplined Joseph on four occasions. (*Id.* ¶ 5; JJ personnel file at $90-98$.) The first, on February 1, 2015, DCSO reprimanded Defendant Joseph for making inappropriate comments to a male inmate about his religious beliefs. (*Id.* at 98.) The second occurred more than two years later, when DCSO and Defendant Joseph agreed to a one day suspension for his failure to complete the necessary reporting after a use of force. (*Id.* at 94-97.) And the third in September of 2020, when DCSO reprimanded Joseph for a tense interaction with an inmate that could have been handled differently. (*Id.* at $92-93$.) And the fourth on January 11, 2021, for cursing at a colleague. (*Id.* at 90-92.)

## ANALYSIS

**I. MUNICIPAL LIABILITY CANNOT BE BASED ON VICARIOUS LIABILITY. BUT THAT IS WHAT PLAINTIFF IS TRYING TO DO BECAUSE DCSO DID NOT HAVE ANY NOTICE THAT JOSEPH WOULD ABUSE MS. AKERS.**

The undisputed material facts establish that DCSO has robust policies (1) prohibiting voyeurism, sexual harassment, and sexual assault and (2) requiring extensive investigations

when allegations of such conduct are made. (Keli Oliver Declaration, ¶¶ 3,4, filed contemporaneously; DCSO Policy 1.1-359 *Preventing Sexual Abuse and Harassment*; DCSO Policy 1.1-360 *Staff and Inmate Relations*, DCSO Policy 1.1361 *Investigations*, attached as Exhibits 1, 2, and 3 to Oliver Declaration.) Because the existence of the stringent policies forecloses that avenue of relief, the Complaint predicates liability on a failure to supervise Joseph. (Compl. ¶¶ 36, 42, Doc. No. 1.) The Complaint extrapolates that because Joseph acted inappropriately, then DCSO failed to supervise. It hypothesizes that prior to harassing and assaulting Ms. Akers, DCSO "had ample opportunities . . . to catch Joseph committing inappropriate acts against female inmates." (*Id.*) This is the textbook example of what *Monell* and its progeny prohibit.

"Municipal governments may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of their employees." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). To succeed on a failure-to-supervise theory, a plaintiff must prove that the City's flawed supervision was the "moving force" behind the unconstitutional conduct, *Monell*, 436 U.S. at 694, and that the City was deliberately indifferent to the "known or obvious" constitutional violations that would result, *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

"In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 392 (1989). There are "two situations justifying a conclusion of deliberate indifference in claims of failure to train or supervise. 'One is failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction.... A second type of ... deliberate indifference is where the city fails to act in response to repeated complaints of

constitutional violations by its officers.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 902-03 (6th Cir. 2018) (cleaned up) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700-01 (6th Cir. 2006)); *see also Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). Neither can be established here.

"[T]he majority of men, and the majority of prison guards, are not rapists merely waiting for an opportunity to assault a woman." *Doe v. Cunningham*, 2006 WL 2819600, *2 (W.D.Va. Sept.28, 2006). And there is no reason for DCSO to assume that its correctional officers, or Joseph in particular, defy that general rule. Prior to September 1, 2021, DCSO had no reason to suspect that Joseph's actions – even the act of entering an inmate's cell – would lead to a constitutional violation. *Mize v. Tedford*, 375 F. App'x 497, 501 (6th Cir. 2010) ("But opportunity alone, without reason to suspect that it will lead to a constitutional violation, does not establish deliberate indifference.").

"The duty to supervise is not a duty to micromanage." *Pecsi v. City of Niles*, 674 F. App'x 544, 547 (6th Cir. 2017). It is anticipated that Plaintiff will argue that if DCSO had reviewed surveillance tape that it would have observed Joseph entering inmate's cells or Ms. Akers's cell. Deliberate indifference requires more. It requires that DCSO knew of Joseph's behavior and failed to act, despite knowing that a likely constitutional violation would occur. There are no facts alleged in the Complaint that establish deliberate indifference. Moreover, there are no facts that could be developed that would establish deliberate indifference. Accordingly, even at this early stage, summary judgment is warranted.

The presence of unrelated prior disciplinary actions will not suffice to establish a failure to supervise claim. *Pecsi*, 674 F. App'x at 547 (three of the four disciplinary incidents were not related to the violent sexual assault of the plaintiff and therefore could not put the city on notice). Joseph's prior disciplinary history consisted of unrelated policy violations and therefore did not put DCSO on notice that he would verbally harass and sexually assault Ms.

Akers or any other inmate. His four disciplinary actions did not involve prohibited sexual behavior at all. (Baylis Decl. ¶ 5; JJ Personnel File, p. 90 – 98.) Accordingly, a constitutional failure to supervise cannot be established, and DCSO is entitled to summary judgment.

Under similar facts the court in *Sexton v. Kenton County Detention Center*, 702 F. Supp. 2d 784, 791 (E.D.Ky. 2010), refused to impose municipal liability. There, the plaintiffs were raped in their cells by a guard. *Id.* at 787. In granting summary judgment to the city, the court identified the factual deficiencies as (1) no evidence of any pattern of sexual abuse by the individual defendant, or any other employee, (2) no evidence of a custom of inaction once there were allegations of sexual assault, and (3) that all of the knowledge about the potential sexual assaults occurred after the plaintiff's report. *Id.* at 791-792.

Those same factual deficiencies exist here, which warrants the same result. There is no reported pattern of sexual abuse by Joseph. Plaintiff does not even attempt to allege a prior pattern of abuse by DCSO correctional officers. Over the last two years the only staff-on-inmate allegation sustained against a DCSO employee was in this case. (Linda Griffin Declaration, ¶ 3, filed contemporaneously.) DCSO immediately sprang into action when the allegations were made. (*See* Joseph Memo.) While multiple inmates recounted Joseph engaging in voyeurism and making inappropriate remarks, they all uniformly stated that they did not report those actions prior to the investigation that began on September 1, 2021. Absent being omniscient, there was no way for DCSO to know about those occurrences. At the conclusion of the investigation, DCSO moved swiftly to terminate Joseph. This Court should follow the cogent reasoning of the court in *Sexton* and grant summary judgment to DCSO.

## II. PLAINTIFF CANNOT USE A STATE LAW VICARIOUS LIABILITY STATUTE TO AVOID THE REQUIREMENTS OF MUNICIPAL LIABILITY UNDER SECTION 1983.

As established above, Section 1983 prohibits *respondeat superior* liability against a municipality. *Monell*, 436 U.S. at 690-91. Plaintiff's state law claim against DCSO fails because she cannot use a vicarious liability state statute, such as the Sheriff's Statute, as an "end-run" around federal law.

The Sheriff's Statute states:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302.

The Sheriff's Statute provides a procedural vehicle to remove the county's immunity for intentional wrongdoing. *Swanson v. Knox Cnty.*, 2007 WL 4117259, at *4-5 (Tenn. Ct. App. 2007). Similarly, Section 1983 provides a vehicle for holding individuals responsible for substantive constitutional violations. *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (Section 1983 does not create substantive rights but instead creates a remedy for rights established elsewhere.)

Section 1983 is complemented by 42 U.S.C § 1988 ("Section 1988"), which states:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C § 1988.

Section 1988 recognizes that existing federal law may not reach every issue that arises in a federal civil rights action. *Moor v. Almeda Cnty.*, 411 U.S. 693, 702 (1973). In that event, state law may be used to supplement federal law, "so long as such principles are not inconsistent with the Constitution and laws of the United States." *Id.* at 703.

A state law that imposes vicarious liability for a constitutional violation is inconsistent with federal law. Accordingly, multiple Courts of Appeal forbid a plaintiff from relying on a state vicarious liability statute to hold a municipality liable when the underlying misconduct alleged against its employees is a civil rights violation. *See, e.g.*, *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979) ("Allowing Louisiana's vicarious liability rules to govern this case would be directly contrary to Monell's construction of § 1983 and thus to the requirements of § 1988."); *Henley v. Edlemon*, 297 F.3d 427, 430 n.6 (5th Cir. 2002) (rejecting plaintiff's attempt to rely on a state law vicarious liability statute as grounds for liability in a Section 1983 lawsuit because allowing plaintiff to do so would be inconsistent with federal law); *Palmer v. Sanderson*, 9 F.3d 1433, 1438 (9th Cir. 1993) (holding that "a state statute imposing vicarious liability" is "inconsistent with the laws of the United States" and thus cannot be the basis for a Section 1983 action).

The Sixth Circuit aligns with this view. In *Siler v. Webber*, it stated:

Section 1983 creates a federal cause of action against "[e]very person who, under color of [law,] . . . subjects . . . any citizen . . . to the deprivation of any rights . . . secured by the Constitution." 42 U.S.C. § 1983. Though municipalities are "persons" within the meaning of § 1983, they "may not be sued . . . for an injury inflicted solely by [their] employees or agents," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); they bear responsibility only for "their own illegal acts," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986).

Notwithstanding *Monell*'s clear prohibition against vicarious liability, Plaintiffs contend that Tennessee law overrides it. They point to Tenn. Code

Ann. § 8-8-302, which creates a state-law cause of action against a county for "any . . . injury . . . resulting from any act or failure to act on the part of [a] deputy." And, noting that 42 U.S.C. § 1988 requires courts to apply state law in federal civil-rights actions, they argue that we must apply Tennessee's vicarious-liability statute here.

Yet Plaintiffs tell only half of § 1988's story: it applies state law to federal actions to the extent that doing so "is not inconsistent with the . . . laws of the United States." 42 U.S.C. § 1988. On one side, *Monell* and its progeny hold that § 1983 prohibits vicarious municipal liability; on the other side, Tenn. Code Ann. § 8-8-302 allows it. Tennessee law thus conflicts with § 1983 and may not be used to maintain a federal action in this instance.

443 F. App'x 50, 53 (6th Cir. 2011) (citations omitted).

Section 1983 is sufficient to redress Ms. Akers's claims. Plaintiff's recovery under the Sheriff's Statute is capped at the amount of the surety bond. Tenn. Code Ann. § 8-8-303(a). In contrast, there is not a cap on compensatory damages in Section 1983 claims, and Section 1988 provides for attorneys' fees.

Additionally, there is an actual conflict between Section 1983 and the Sheriff's Statute. One statute prohibits liability based on vicarious liability and the other permits it. That conflict, as noted by the Sixth Circuit and multiple district courts, warrants dismissing the Sheriff's Statute claim. *See Minick v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, No. 3:12-CV-0524, 2015 WL 4506345, at *2 (M.D. Tenn. July 23, 2015) (Trauger, J.) ("[Tenn. Code Ann. § 8-8-302] thus conflicts with § 1983 and may not be used to maintain a federal action in this instance."); *Henderson v. Reyda*, No. 3:03-CV-703, 2005 WL 1397030, at *7 (E.D. Tenn. June 13, 2005) (finding that the Sheriff's Statute "does not extend the scope of § 1983 liability" and thus cannot be relied upon as an end-run around Section 1983 municipal liability), *aff'd and remanded*, 192 F. App'x 392 (6th Cir. 2006).

The only reason to include a Sheriff's Statute claim is because the proof only establishes vicarious liability. Plaintiff cannot prove deliberate indifference because there was no notice to DCSO. Plaintiff should not be permitted to use a state law tort (battery and

intentional infliction of emotional distress) as a straw man or to plead in the alternative to impose vicarious liability on DCSO for constitutional violations.[3] The thrust of Plaintiff's Complaint is that Joseph violated Ms. Akers's constitutional rights. The Complaint relies on the exact same allegations to support both its constitutional violations and the state law violations. All claims in this case are alleged to have been committed in the context of violations of Ms. Akers's constitutional rights when Joseph sexually harassed and assaulted her. (Compl. ¶¶ 33, 34, 39, 40, 57 (relying on Joseph's acts of sexual misconduct to support each cause of action).)

Pursuant to *Monell* and its progeny, DCSO cannot be vicariously liable for a constitutional violation on the part of its employees. The Sheriff's Statute creates a remedy for "wrongs" committed by sheriff's deputies. The "wrong" that has been pled in this case is the same regardless of the heading. To permit the Sheriff's Statute claims to proceed – despite the claim being identical to the constitutional claim – would violate both the Supreme Court's pronouncement in *Monell* and Section 1988. Plaintiff's attempts to use the Sheriff's Statute to make an end-run around the requirements of Section 1983 should be rejected and summary judgment granted on that claim.

## CONCLUSION

DCSO cannot be held liable for the actions of Joseph. The undisputed material facts establish that there were no reports of Joseph's behavior until after he violated Ms. Akers.

---

[3] An analogous situation is when a plaintiff brings a claim that alleges constitutional violations and a negligence claim under the Tennessee Governmental Tort Liability Act ("TGTLA"). The TGTLA prohibits claims that arise out of civil rights. When a civil rights claim is pled, the claim necessarily arises out of civil rights. In that instance, courts routinely dismiss inconsistent state law claims because doing so would violate the TGTLA's preservation of governmental immunity. *See Allred v. Rodriguez*, 399 F. Supp. 3d 730, 734 (E.D. Tenn. 2019) (prohibiting alternative pleading of Section 1983 claims and TGTLA claims.) That same logic applies with equal force here. A Sheriff's Statute claim and a Section 1983 claim cannot be brought in the same lawsuit.

The undisputed material facts also establish that Joseph's prior disciplinary history consisted of sporadic, unrelated incidents. And while entering an inmate's cell violated DCSO policy, it is pure speculation to conclude that sexual harassment or sexual assault must have occurred in that context. Because the Plaintiff cannot establish that DCSO was deliberately indifferent and failed to supervise Joseph, the Section 1983 claims fail.

Also, the Sheriff's Statute cannot be used to subvert the requirements of Section 1983. Because the Complaint relies on the same conduct to establish both a constitutional violation and a state law to impose vicarious liability, the state law Sheriff's Statute claim must be dismissed.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ (#9949)
DIRECTOR OF LAW

*/s/ Melissa Roberge*
MELISSA ROBERGE (#26230)
MICHAEL R. DOHN (#37535)
ASSISTANT METROPOLITAN ATTORNEYS
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
Melissa.Roberge@nashville.gov
Michael.Dohn@nashville.gov
*Counsel for Metro*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served via CM/ECF to:

Kyle F. Mothershead                    James B. Johnson
2901 Dobbs Avenue                      1300 Division Street, Suite 300
Nashville, Tennessee 37211             Nashville, Tennessee 37203

on this 5th day of October 2022.

*/s/ Melissa Roberge*
Melissa Roberge